## IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:
**TIGIST GUEBREYES,**                          :          **CHAPTER 13**
**Debtor**
                                               :   **BANKRUPTCY NO. 16-14007**


## ORDER SUR DEBTOR'S OBJECTIONS TO PROOF OF CLAIM FILED ON BEHALF OF US BANK, NATIONAL ASSOCIATION, et al. ("USB")

AND NOW, this          day of January, 2017, it is hereby ORDERED

as follows:

1. The Objections are SUSTAINED.

2. The Proof of Claim filed on behalf of USB for is DISALLOWED in its entirety.

3. USB shall resume of process a new loan modification application for the Debtor within 60 days from this date.

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:
**TIGIST GUEBREYES,**
**Debtor**

:      **CHAPTER 13**

:      **BANKRUPTCY NO. 16-14007**

## DEBTOR'S OBJECTIONS TO PROOF OF CLAIM FILED ON BEHALF OF US BANK, NATIONAL ASSOCIATION, ET AL. ("USB")

The Debtor now comes and makes the following Objections ("the

Objections") to the Proof of Claim filed in this case (No. 5) on behalf of USB:

1. USB filed proof of claim No. 5 ("POC") on October 27, 2016, asserting, inter alia, a

right to a total secured claim of USB of $144,423.16 and an arrearage of $39,610.72. A copy of

the POC, with its voluminous Exhibits, is attached as Exhibit "A."

2. The POC is based upon the Debtor's execution of a Note and accompanying Mortgage

executed by the Debtor on July 30, 2008 November 30, 2005, in favor of Sovereign Bank

("Sovereign") in the amount of $120,650.

3. The assignments attached to the documents supporting the POC indicate assignments

from Sovereign to the Pennsylvania Housing Finance Agency ("PHFA") and from PHFA to

USB.

4. On July 31, 2014, USB commenced a mortgage foreclosure action against the Debtor in

the Court of Common Pleas of Philadelphia County ("the Court"). The Debtor opted to become

involved in the Court's Conciliation Program and was in the process of negotiating for a loan

modification with USB.

5.    The Debtor made an offer for a loan modification agreement to USB but never received any response. As a result, the Court ended the conciliation process ended and USB was permitted to proceed to obtain a judgment in foreclosure against the Debtor.

6.    The Debtor believes that she should have received a response to her loan modification offer and that therefore USB should be required to continue to participate in the conciliation program which would have eliminated USB's claim against the Debtor for arrears, rather than attempting to press a claim including substantial arrears against the Debtor in this bankruptcy case.

7.    In addition, the Debtor believes that the voluminous documentation supporting USB's claim is impossible to decipher, and that USB should be required to clearly explain the monetary basis for its claim.

8.    Therefore, the claim of USB based on the mortgage in issue should must be disallowed until the loan modification process is exhausted or USB clearly explains the amount of its claim..

        WHEREFORE, the Debtor requests that this court will enter the

Proposed Order accompanying the Objections.

                                        /s/DAVID A. SCHOLL
                                        512 Hoffman Street
                                        Philadelphia, PA. 19148
                                        610-550-1765
                                        Attorney for Debtor

**Fill in this information to identify the case:**

Debtor 1    Tigist Guebreyes aka Tigist Guebreyes-Yimer

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   16-14007 MDC

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | U.S. BANK NATIONAL ASSOCIATION (TRUSTEE FOR THE PENNSYLVANIA HOUSING FINANCE AGENCY) <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Name   **PHFA Loan Servicing Division**

Number **211 North Front Street**

City   **Harrisburg**   State **PA**   ZIP Code **17101**

Contact phone   800-822-7375

Contact email

**Where should payments to the creditor be sent? (if different)**

Name

Street    Number    Street

City      State      ZIP Code

Contact phone

Contact email

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known)_____ | Filed on _____ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ | |

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 8948

**7. How much is this claim?** $144,423.16 Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

Nature of property:

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:

Basis for perfection: Mortgage/Note/Property  1336 Kimberly Drive Philadelphia, PA 19151
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                                                $
Amount of the claim that is secured:        $144,423.16

Amount of the claim that is unsecured: $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition  $39,610.72

Annual Interest Rate (when case was filed) 5.875%
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes, Amount necessary to cure any default as of the date of the petition.        $_____

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. Check all that apply:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☒ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 10 / 27 / 2016
MM / DD / YYYY

/s/ Joshua I. Goldman, Esquire
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Joshua First name | I. Middle name | Goldman Last name |
|---|---|---|---|
| Title | Bankruptcy Attorney | | |
| Company | KML Law Group, P.C. | | |

Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 701 Market Street, Suite 5000
Number    Street

| Philadelphia City | | PA State | 19106 ZIP Code |
|---|---|---|---|

Contact phone 215-825-6308     Email jgoldman@kmllawgroup.com

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

(12/15)

## Part 1: Mortgage and Case Information

| Case Number | 16-14007 |
| Debtor 1: | TROST GUERRETTES |
| Debtor 2: | |
| Last 4 digits to identify | 8948 |
| Creditor: | PHFA |
| Servicer: | PHFA |
| Fixed accrual/daily/ | Fixed |
| simple interest/other | 5.875 |

## Part 2: Total Debt Calculation

| Principal balance: | 111,038.81 |
| Interest due: | 18,525.52 |
| Fees, costs due: | 10,133.22 |
| Escrow deficiency for funds advanced: | 7,321.81 |
| Less total funds on hand: | 0.00 |
| Total debt: | 144,423.16 |

## Part 3: Arrearage as of Date of the Petition

| Principal & interest due: | 20,897.20 |
| Prepetition fees due: | 10,133.22 |
| Escrow deficiency for funds advanced: | 7,321.81 |
| Projected escrow shortage | 1,456.59 |
| Less funds on hands: | 0.00 |
| Total prepetition arrearage: | 39,410.72 |

## Part 4: Monthly Mortgage Payment

| Principal & interest: | 713.70 |
| Monthly escrow: | 220.00 |
| Private mortgage insurance: | 56.30 |
| Total monthly Payment: | 990.00 |

## Part 5: Loan Payment History from First Date of Default

Date of Default 1-1-14

[Complex multi-column payment history table — see image for full detail]

Official Form 410A
Date: 10/19/2016
*Contradiction/due date changes to the next payment due when payment is received

Mortgage Proof of Claim Attachment
Bankruptcy File Date: 05/20/2016

Page 1 of 24
12:36:28PM

Part 5: Loan Payment History for [Case No.] 16-14007-mdc    Claim 5    Filed 10/27/16    Desc Main Document    Page 5 of 55

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 10/15/2008 | $50.00 | 0.10 | | Contractual Payment Amt | 10/15/2008 | $0.00 | 0.09 | 0.00 | 0.00 | 0.00 | 0.00 | | | | $45.00 | .00 |
| 11/2/2008 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 10/15/2008 | 0.00 | 0.00 | 0.00 | (95.00) | 0.00 | 0.00 | | | | $55.00 | .00 |
| 10/3/2008 | 0.00 | 0.00 | 35.89 | Rec Payback of Assessment | 12/1/2008 | 0.00 | 0.00 | 0.00 | 0.00 | 33.80 | 0.00 | | | | 485.00 | 35.89 |
| 10/4/2009 | 0.00 | 342.31 | 0.00 | Payment a TOR used to pay escrow shortage | 12/1/2008 | 0.00 | 325.44 | 668.35 | 35.45 | 0.00 | | | | | (758.31) | 0.00 |
| 1/1/2020 | $50.00 | 0.00 | 0.00 | Contractual Payment Amt | 1/1/2009 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 1,120.31 | 0.00 |
| 2/4/2009 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 1/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | (95.00) | 0.00 | | | | 1,654.51 | 0.00 |
| 2/12/2009 | 0.00 | 316.08 | | ESCROW ADVANCE FOR DISBURSEMENT | 1/1/2009 | 0.00 | 0.00 | 0.00 | 316.51 | 0.00 | | | | | 1,004.81 | 0.00 |
| 2/13/2009 | 0.00 | (1,392.84) | 0.00 | SCHOOL/LOCAL TAX | 1/1/2009 | 0.00 | 0.00 | 0.00 | (1,392.64) | 0.00 | | | | | (745.25) | 0.00 |
| 3/19/2009 | 0.00 | $50.00 | | Payment received again amount received | 1/1/2009 | 1.00 | 1.00 | 557.54 | 253.32 | 0.00 | | | | | 18.07 | 0.00 |
| 2/13/2009 | 0.00 | (758.23) | 0.00 | Recovery of Escrow Adv from Borrower | 1/1/2009 | 0.00 | 0.00 | 0.00 | (318.53) | 0.00 | | | | | 18.61 | 0.00 |
| 3/1/2009 | 400.00 | 0.09 | 0.00 | Contractual Payment Amt | 3/1/2009 | 668.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 18.07 | 0.00 |
| 3/16/2009 | 0.00 | 38.23 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 3/1/2009 | 0.00 | 0.00 | 0.00 | 38.23 | 0.00 | | | | | 18.07 | 0.00 |
| 3/13/2009 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 2/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | (95.00) | 0.00 | | | | (38.23) | 0.00 |
| 3/19/2009 | 0.00 | $50.00 | | Payment received again amount received | 3/19/2009 | 0.00 | 106.58 | 657.02 | 200.30 | 0.00 | | | | | 168.07 | 0.00 |
| 3/19/2009 | 0.00 | (95.00) | 0.00 | Recovery of Escrow Adv from Borrower | 2/1/2009 | 0.00 | 0.00 | 0.00 | (38.23) | 0.00 | | | | | 168.07 | 0.00 |
| 4/1/2009 | $50.00 | 2.00 | 0.00 | Contractual Payment Amt | 3/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 168.07 | 0.00 |
| 4/2/2009 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 3/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | (95.00) | 0.00 | | | | 141.77 | 0.00 |
| 4/2/2009 | 0.00 | 1.20 | 0.00 | Escrow Interest Payment | 3/1/2009 | 0.00 | 0.00 | 0.00 | 1.20 | 0.00 | | | | | 942.57 | 0.00 |
| 4/15/2009 | 0.00 | $50.00 | 0.00 | Payment received equals amount received | 3/19/2009 | 127.50 | 0.00 | 0.00 | 206.26 | 0.00 | | | | | 378.27 | 0.00 |
| 4/2/2009 | 550.00 | 0.00 | 0.00 | Contractual Payment Amt | 4/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 505.27 | 0.00 |
| 5/4/2009 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 4/1/2009 | 0.00 | 0.00 | (95.00) | 0.00 | 0.00 | | | | | 322.57 | 0.00 |
| 5/15/2009 | 0.00 | 552.00 | 0.00 | Payment received equals amount received | 4/15/2009 | 127.50 | 0.00 | 585.79 | 206.26 | 0.00 | | | | | 559.37 | 0.00 |
| 5/15/2009 | 558.00 | 0.00 | 0.00 | Contractual Payment Amt | 5/15/2009 | 550.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 559.37 | 0.00 |
| 6/27/2011 | 0.00 | (95.00) | 0.00 | PMI Disbursement | 5/15/2009 | 0.00 | 0.00 | (95.00) | 0.00 | 0.00 | | | | | 552.27 | 0.00 |
| 6/18/2009 | 0.00 | $50.00 | | Payment received equals amount received | 5/15/2009 | 128.55 | 0.00 | 565.16 | 231.00 | 0.00 | | | | | 739.37 | 0.00 |

Official Form 410A
Date: 10/18/2016
Mortgage Proof of Claim Attachment
Bankruptcy File Date:    05/28/2016
Page 2 of 24
12:28:28PM

* Contractual due date changes to the next payment due when payment is received.

Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 6 of 55

Part 5: Loan Payment History from First Date of Default

## Account Activity

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Mortgages Proof of Claim Attachment*

Official Form 410A

Date: 10/14/2016

*Contractual due date changes to the next payment due when payment is received.*

Bankruptcy File Date:   05/28/2016

Page 3 of 24
12:26:20PM

Part 5: Loan Payment History from First Date of Default

Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 7 of 55

| A Date | B Contractual payment amount | C Funds received | D Amount incurred | E Description | F Contractual due date* | G Prin, Int & esc past due balance | H Amount to principal | I Amount to interest | J Amount to escrow | K Amount to fees or charges | L Unapplied funds | M Principal balance | N Accrued interest balance | O Escrow balance | P Fees / Charges balance | Q Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/13/2009 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 11/1/2008 | 366.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 118,827.82 | 1,462.31 | 442.80 | 385.05 | .00 |
| 12/2/2009 | 0.00 | 96.55 | 0.00 | PMI Disbursement | 11/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | (96.56) | 0.00 | 118,871.85 | 1,463.31 | 385.05 | 36.05 | .00 |
| 12/17/2009 | 0.00 | 0.00 | 36.69 | Fee Payment or Assessment | 11/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36.69 | 118,871.85 | 1,463.31 | 385.05 | 71.38 | .00 |
| 12/31/2009 | 0.00 | 0.00 | 0.00 | Escrow Interest Payment | 11/1/2009 | 0.00 | 0.00 | 0.00 | 0.52 | 0.00 | 0.00 | 118,871.85 | 1,463.31 | 387.40 | 71.38 | .00 |
| 1/27/2010 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 11/1/2009 | 2,850.00 | 6.80 | 0.00 | 0.00 | 0.00 | 0.00 | 118,871.85 | 1,749.99 | 387.40 | 71.38 | .00 |
| 1/26/2010 | 0.00 | 0.00 | 2.05 | PMI Disbursement | 12/1/2009 | 0.00 | 0.00 | 0.00 | (96.56) | 0.00 | 0.00 | 118,871.85 | 1,749.99 | 325.58 | 71.38 | .00 |
| 1/13/2010 | 0.00 | 96.56 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 12/1/2009 | 0.00 | 0.00 | 0.00 | 96.56 | 0.00 | 0.00 | 118,871.85 | 1,749.99 | 325.58 | 71.38 | .00 |
| 1/13/2010 | 0.00 | 0.00 | 0.00 | SCHOOLOGICAL TAX | 12/1/2009 | 0.00 | 0.00 | 0.00 | (1,393.94) | 0.00 | 0.00 | 118,871.85 | 1,749.99 | (951.65) | 71.38 | .00 |
| 1/19/2010 | 950.00 | 0.00 | 0.00 | Fee Payment or Assessment | 12/1/2009 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.69 | 118,871.85 | 1,749.99 | (951.65) | 107.07 | .00 |
| 1/19/2010 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 1/1/2010 | 3,800.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 118,871.85 | 2,374.00 | (951.65) | 107.07 | .00 |
| 3/25/2010 | 0.00 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 1/1/2010 | 0.00 | 0.00 | 0.00 | 56.30 | 0.00 | 0.00 | 118,871.85 | 2,374.00 | (895.35) | 107.07 | .00 |
| 2/6/2010 | 0.00 | (56.30) | 0.00 | PMI Disbursement | 1/1/2010 | 0.00 | 0.00 | 0.00 | (56.30) | 0.00 | 0.00 | 118,871.85 | 2,374.00 | (951.65) | 107.07 | .00 |
| 2/12/2010 | 0.00 | 0.00 | 36.69 | Fee Payment or Assessment | 1/1/2010 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36.69 | 118,871.85 | 2,374.00 | (951.65) | 143.76 | .00 |
| 2/12/2010 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 2/1/2010 | 4,750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 118,871.85 | 2,923.68 | (951.65) | 143.76 | .00 |
| 3/6/2010 | 0.25 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 2/1/2010 | 0.00 | 0.00 | 0.00 | 86.30 | 0.00 | 0.00 | 118,871.85 | 2,923.68 | (895.35) | 143.76 | .00 |
| 3/6/2010 | 0.00 | 0.00 | 0.00 | PMI Disbursement | 2/1/2010 | 0.00 | 0.00 | 0.00 | (95.70) | 0.00 | 0.00 | 118,871.85 | 2,923.68 | (991.05) | 143.76 | .00 |
| 3/18/2010 | 0.00 | 0.00 | 14.00 | Cash Disbursements from corp advance | 2/1/2010 | 0.00 | 0.00 | 0.00 | 0.00 | 14.00 | 0.00 | 118,871.85 | 2,923.68 | (1,004.85) | 152.43 | .00 |
| 3/17/2010 | 0.00 | 0.00 | 36.69 | Fee Payment or Assessment | 2/1/2010 | 0.00 | 0.00 | 0.00 | 22.58 | 0.00 | 0.00 | 118,871.85 | 2,923.68 | (1,004.85) | 152.43 | .00 |
| 3/26/2010 | 0.00 | 0.00 | 12.28 | Cash Disbursements from corp advance | 2/1/2010 | 0.00 | 0.00 | 0.00 | 12.20 | 0.00 | 0.00 | 118,871.85 | 2,923.68 | (1,004.24) | 204.80 | .00 |
| 3/10/2010 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 3/1/2010 | 4,750.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 118,871.85 | 3,482.18 | (1,004.24) | 204.45 | .00 |
| 4/7/2010 | 0.00 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 3/1/2010 | 0.00 | 0.00 | 0.00 | 56.30 | 0.00 | 0.00 | 118,871.85 | 3,482.18 | (994.45) | 204.45 | .00 |
| 4/22/2010 | 0.00 | (95.70) | 0.00 | PMI Disbursement | 3/1/2010 | 0.00 | 0.00 | 0.00 | (95.70) | 0.00 | 0.00 | 118,871.85 | 3,482.18 | (1,133.94) | 204.45 | .00 |
| 4/19/2010 | 0.00 | 0.00 | 0.00 | Escrow Interest Payment | 3/1/2010 | 0.00 | 0.00 | 0.00 | 0.57 | 0.00 | 0.00 | 118,871.85 | 3,482.18 | (1,133.30) | 204.45 | .00 |
| 4/10/2010 | 0.00 | 0.00 | 0.00 | Recovery of Escrow advances to Borrower | 3/1/2010 | 0.00 | 0.00 | 0.00 | (0.17) | 0.00 | 0.00 | 118,871.85 | 3,482.32 | (1,133.30) | 204.45 | .00 |
| 4/19/2010 | 0.00 | 0.00 | 36.69 | Fee Payment or Assessment | 3/1/2010 | 0.00 | 0.00 | 0.00 | (0.32) | 0.00 | 36.69 | 118,871.85 | 3,482.32 | (1,133.30) | 240.18 | .00 |

Official Form 410A
Date: 10/15/2016

Mortgage Proof of Claim Attachment
Bankruptcy File Date: 05/20/2016

Page 4 of 24
12:25:25PM

* Contractual due date changes in the next payment due when payment is assessed.

Part 5: Loan Payment History from First Bank 14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 8 of 55

| A Date | B Contractual payment amount | C Funds received | D Amount incurred | E Description | F Contractual due date * | G Prin, int & esc paid due balance | H Amount to principal | H Amount to interest | J Amount to escrow | K Amount to fees or charges | L Unapplied funds | M Principal balance | N Accrued interest balance | O Escrow balance | P Fees / Charges balance | Q Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Contractual due date changes to the next payment due when payment is received.

Official Form 410A
Date: 10/19/2016

Mortgage Proof of Claim Attachment
Bankruptcy File Date:   05/28/2016

Page 5 of 24
12:36:26PM

Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 9 of 55

**Part 5: Loan Payment History from First Date of Default**

Account Activity | How Funds Were Applied/Amount Incurred | Balance After Amount Received or Incurred

| A. Date | B. Contractual payment amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*(The table data rows are not legibly reproducible at this resolution.)*

Official Form 410A
Date: 10/18/2016
* Contractual due date changes changes to the next payment due when payment is received

Mortgage Proof of Claim Attachment
Bankruptcy File Date:   05/26/2016

Page 6 of 24
12:20:28PM

Part 5: Loan Payment History from First Date of Default   Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 10 of 55

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. PHin, int & escrow past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Mortgage Proof of Claim Attachment
Bankruptcy File Date:   05/29/2016

Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrual interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Deemed late charge premium | | | | | | | | | | | | |



Official Form 410A
Date: 10/15/2016

Mortgage Proof of Claim Attachment
Bankruptcy File Date:      05/28/2016

* Contractual due date changes to the next payment due when payment is received.

Part 5: Loan Payment History from First Date of Default

Claim 5   Filed 10/27/16   Desc Main Document   Page 12 of 55

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Fee Payment or Assessment | | | | | | | | | | | | |

Mortgage Proof of Claims Attachment
Bankruptcy File Date:

Part 5: Loan Payment History from First Date of Default

Page 13 of 55

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Contractual Payment Amt | 7/1/2011 | 3,384.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 115,948.38 | 2,274.21 | (1,510.37) | 197.37 | 84.31 |
| | 0.00 | 58.38 | | ESCROW ADVANCE FOR DISBURSEMENT | 7/1/2011 | 0.00 | 0.00 | 0.00 | (58.38) | 58.38 | 0.00 | 116,948.38 | 2,274.21 | (1,513.37) | 197.37 | 84.31 |
| | 0.00 | (58.38) | | PMI Disbursement | 7/1/2011 | 0.00 | 0.00 | 0.00 | (58.38) | 0.00 | 0.00 | 116,948.38 | 2,274.21 | (1,510.37) | 197.37 | 84.31 |
| | 0.00 | 0.00 | 85.68 | Fee Payment or Assessment | 7/1/2011 | 0.00 | 0.00 | 0.00 | 26.68 | 0.00 | 0.00 | 116,948.38 | 2,274.21 | (1,508.37) | 141.78 | 84.31 |
| | 0.00 | 0.00 | 12.00 | Cash Disbursements from loan advance | 7/3/2011 | 0.00 | 0.00 | 0.00 | 12.00 | 0.00 | 0.00 | 116,948.38 | 2,274.21 | (1,508.37) | 154.76 | 84.31 |
| | 0.00 | 0.00 | 0.00 | Contractual Payment Amt | 8/1/2011 | 3,384.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 2,848.88 | (1,508.37) | 154.76 | 84.31 |
| | 0.00 | 58.38 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 8/1/2011 | 0.00 | 0.00 | 0.00 | 58.38 | 0.00 | 0.00 | 116,948.38 | 2,848.88 | (1,566.37) | 154.76 | 84.31 |
| | 0.00 | (58.38) | 0.00 | PMI Disbursement | 8/1/2011 | 0.00 | 0.00 | 0.00 | (58.38) | 0.00 | 0.00 | 116,948.38 | 2,848.88 | (1,508.37) | 154.76 | 84.31 |
| | 0.00 | 0.00 | 0.00 | Fee Payment or Assessment | 8/11/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 2,848.88 | (1,508.37) | 198.36 | 84.31 |
| | 0.00 | 0.00 | 0.00 | Contractual Payment Amt | 9/1/2011 | 6,768.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,423.55 | (1,625.52) | 198.46 | 84.31 |
| | 550.00 | 0.00 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 9/1/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,423.55 | (1,608.62) | 198.46 | 84.31 |
| | 0.00 | 0.00 | 0.00 | PMI Disbursement | 9/1/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,423.55 | (1,625.52) | 198.46 | 84.31 |
| | 0.00 | (58.38) | 0.00 | Fee Payment or Assessment | 9/14/2011 | 0.00 | 0.00 | 0.00 | (58.38) | 0.00 | 0.00 | 116,948.38 | 3,423.55 | (1,622.17) | 198.46 | 84.31 |
| | 0.00 | 0.00 | 0.00 | Contractual Payment Amt | 9/16/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,423.55 | (1,661.17) | 228.16 | 84.31 |
| | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 10/1/2011 | 6,768.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,972.96 | (1,662.17) | 228.16 | 84.31 |
| | 0.00 | 96.38 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 10/7/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,972.96 | (1,962.17) | 228.16 | 84.31 |
| | 0.00 | (96.38) | 0.00 | PMI Disbursement | 10/7/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,972.96 | (1,758.47) | 228.16 | 84.31 |
| | 0.00 | 0.00 | 12.00 | Cash Disbursements from loan advance | 10/7/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 12.00 | 0.00 | 116,948.38 | 3,972.96 | (1,758.47) | 228.14 | 84.31 |
| | 0.00 | 0.00 | 0.00 | Fee Payment or Assessment | 10/7/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,972.96 | (1,758.47) | 273.83 | 84.31 |
| | 0.00 | 0.00 | 12.00 | Cash Disbursements from loan advance | 10/13/2011 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 3,972.96 | (1,758.47) | 285.83 | 84.31 |
| | 800.00 | 0.00 | 0.00 | Contractual Payment Amt | 11/1/2011 | 7,088.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116,948.38 | 4,596.86 | (1,758.47) | 285.83 | 84.31 |
| | 0.00 | 96.38 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 11/1/2011 | 0.00 | 0.00 | 0.00 | 96.38 | 0.00 | 0.00 | 116,948.38 | 4,596.86 | (1,758.47) | 285.83 | 84.31 |
| | 0.00 | (96.38) | 0.00 | PMI Disbursement | 11/1/2011 | 0.00 | 0.00 | 0.00 | (96.38) | 0.00 | 0.00 | 116,948.38 | 4,596.86 | (1,758.47) | 285.83 | 84.31 |
| | 0.00 | 615.68 | 0.00 | Payment to Reinsurance automatic inst | 11/1/2011 | 0.00 | 144.09 | 0.00 | 0.00 | 0.00 | 817.08 | 115,892.26 | 4,596.86 | (1,758.47) | 285.83 | 84.31 |
| | 0.00 | 958.00 | 0.00 | Payment-full amount from forbearance | 11/1/2011 | 0.00 | 958.97 | 0.00 | 0.00 | 0.00 | 0.00 | 115,892.26 | 4,596.86 | (1,511.47) | 285.83 | 84.31 |
| | 0.00 | (285.33) | 0.00 | Recovery of Escrow Advance Shortage | 11/1/2011 | 0.00 | 0.00 | 0.00 | (285.33) | 0.00 | 0.00 | 116,269.26 | 4,596.86 | (1,511.47) | 285.83 | .00 |

Official Form 410A

Date: 10/18/2016

Mortgage Proof of Claim Attachment
Bankruptcy Filing Date: 05/26/2016

Page 10 of 24
12:38:28PM

*Confidential data data changed to the used payment due when payment is received.

Case 16-14007-mdc    Doc 29    Filed 10/27/16    Claim 5    Desc Main Document    Page 14 of 55

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Plin. int & escr past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Official Form 410A

Date: 10/16/2016

Mortgage Proof of Claim Attachment

Bankruptcy File Date:    05/28/2016

* Contractual due date charges to the next payment due when payment is received.

Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc paid over balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Official Form 410A

Date: 10/19/2016

* Contractual due date changes to the next payment due when payment is received.

Mortgage Proof of Claim Attachment
Bankruptcy File Date:    05/28/2016

Part 5: Loan Payment History from First Date of Default

Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 16 of 55

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due Date | G. Date pmt PITI & esc pmt due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |

Official Form 410A
Date: 10/19/2016

Mortgage Proof of Claim Attachment
Bankruptcy File Date:   05/26/2016

* Contractual due date changes to the next payment due when payment is received.

Case 16-14007-mdc Claim 5 Filed 10/27/16 Desc Main Document Page 17 of 55

**Part 5: Loan Payment History from First Date of Default**

| Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6/19/2012 | 0.00 | 0.00 | (25.00) | Fee noncash credit adjustment | 5/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | (25.00) | 0.00 | 114,165.79 | 0.00 | (1,181.36) | 0.00 | 375.00 |
| 6/22/2012 | 0.00 | 677.00 | 0.00 | Payment to forbearance suspense acct | 5/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 677.00 | 114,165.79 | 0.00 | (1,181.36) | 0.00 | 1,052.00 |
| 6/25/2012 | 0.00 | 1,052.00 | 0.00 | Payment-full amount from forbearance | 6/1/2012 | 0.00 | 154.76 | 558.94 | 338.30 | 0.00 | 0.00 | 114,011.03 | 0.00 | (822.56) | 0.00 | .00 |
| 6/28/2012 | 0.00 | (338.30) | 0.00 | Recovery of Escrow Adv from Borrower | 6/1/2012 | 0.00 | 0.00 | 0.00 | (338.30) | 0.00 | 0.00 | 114,011.03 | 0.00 | (823.06) | 0.00 | .00 |
| 6/1/2012 | 900.00 | 0.00 | 0.00 | Contractual Payment Amt | 6/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114,011.03 | 0.00 | (823.06) | 0.00 | .00 |
| 7/5/2012 | 0.00 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 6/1/2012 | 0.00 | 0.00 | 0.00 | 56.30 | 0.00 | 0.00 | 114,011.03 | 0.00 | (823.06) | 0.00 | .00 |
| 7/5/2012 | 0.00 | (56.30) | 0.00 | PMI Disbursement | 6/1/2012 | 0.00 | 0.00 | 0.00 | (56.30) | 0.00 | 0.00 | 114,011.03 | 0.00 | (879.36) | 0.00 | .00 |
| 7/18/2012 | 0.00 | 375.00 | 0.00 | Payment to forbearance suspense acct | 6/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 375.00 | 114,011.03 | 0.00 | (879.36) | 0.00 | 375.00 |
| 7/1/2012 | 900.00 | 0.00 | 0.00 | Contractual Payment Amt | 7/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114,011.03 | 558.18 | (879.36) | 0.00 | 375.00 |
| 8/6/2012 | 0.00 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 7/1/2012 | 0.00 | 0.00 | 0.00 | 56.30 | 0.00 | 0.00 | 114,011.03 | 558.18 | (879.36) | 0.00 | 375.00 |
| 8/6/2012 | 0.00 | (56.30) | 0.00 | PMI Disbursement | 7/1/2012 | 0.00 | 0.00 | 0.00 | (56.30) | 0.00 | 0.00 | 114,011.03 | 558.18 | (935.66) | 0.00 | 375.00 |
| 8/20/2012 | 0.00 | 677.00 | 0.00 | Payment to forbearance suspense acct | 7/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 677.00 | 114,011.03 | 558.18 | (935.66) | 0.00 | 1,052.00 |
| 8/20/2012 | 0.00 | 1,052.00 | 0.00 | Payment-full amount from forbearance | 7/1/2012 | 0.00 | 155.52 | 558.18 | 338.30 | 0.00 | 0.00 | 113,855.51 | 558.18 | (597.36) | 0.00 | .00 |
| 8/20/2012 | 0.00 | (338.30) | 0.00 | Recovery of Escrow Adv from Borrower | 7/1/2012 | 0.00 | 0.00 | 0.00 | (338.30) | 0.00 | 0.00 | 113,855.51 | 558.18 | (597.36) | 0.00 | .00 |
| 8/23/2012 | 0.00 | 1,052.00 | 0.00 | Payment required equals amount received | 7/1/2012 | 0.00 | 156.28 | 557.42 | 338.30 | 0.00 | 0.00 | 113,699.23 | 558.18 | (259.06) | 0.00 | .00 |
| 8/23/2012 | 0.00 | (338.30) | 0.00 | Recovery of Escrow Adv from Borrower | 7/1/2012 | 0.00 | 0.00 | 0.00 | (338.30) | 0.00 | 0.00 | 113,699.23 | 558.18 | (259.06) | 0.00 | .00 |
| 8/1/2012 | 850.00 | 0.00 | 0.00 | Contractual Payment Amt | 8/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 113,699.23 | 0.00 | (259.06) | 0.00 | .00 |
| 9/5/2012 | 0.00 | 56.30 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 8/1/2012 | 0.00 | 0.00 | 0.00 | 56.30 | 0.00 | 0.00 | 113,699.23 | 0.00 | (259.06) | 0.00 | .00 |
| 9/5/2012 | 0.00 | (56.30) | 0.00 | PMI Disbursement | 8/1/2012 | 0.00 | 0.00 | 0.00 | (56.30) | 0.00 | 0.00 | 113,699.23 | 0.00 | (315.36) | 0.00 | .00 |
| 9/24/2012 | 0.00 | 1,052.00 | 0.00 | Payment required equals amount received | 8/1/2012 | 0.00 | 157.05 | 556.65 | 338.30 | 0.00 | 0.00 | 113,542.18 | 0.00 | 23.04 | 0.00 | .00 |
| 9/24/2012 | 0.00 | (315.26) | 0.00 | Recovery of Escrow Adv from Borrower | 9/1/2012 | 0.00 | 0.00 | 0.00 | (315.26) | 0.00 | 0.00 | 113,542.18 | 0.00 | 23.04 | 0.00 | .00 |
| 9/1/2012 | 850.00 | 0.00 | 0.00 | Contractual Payment Amt | 9/1/2012 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 113,542.18 | 0.00 | 23.04 | 0.00 | .00 |
| 10/3/2012 | 0.00 | 33.26 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 9/1/2012 | 0.00 | 0.00 | 0.00 | 33.26 | 0.00 | 0.00 | 113,542.18 | 0.00 | 23.04 | 0.00 | .00 |
| 10/3/2012 | 0.00 | (56.30) | 0.00 | PMI Disbursement | 9/1/2012 | 0.00 | 0.00 | 0.00 | (56.30) | 0.00 | 0.00 | 113,542.18 | 0.00 | (33.26) | 0.00 | .00 |
| 10/24/2012 | 0.00 | 1,052.00 | 0.00 | Payment required equals amount received | 9/1/2012 | 0.00 | 157.82 | 555.88 | 338.30 | 0.00 | 0.00 | 113,384.36 | 0.00 | 305.04 | 0.00 | .00 |

Official Form 410A
Date: 10/19/2016
* Contractual due date changes to the next payment due when payment is received.
Mortgage Proof of Claim Attachment
Bankruptcy File Date: 05/28/2016
Page 14 of 24
12:26:29PM

Case 16-14007-mdc    Doc 29    Filed 10/27/16    Desc Main Document    Page 18 of 55

Part 5: Loan Payment History from First Date of Default    Claim 5

| A. Date | B. Contractual payment amount | C. Funds received | D. Account incurred | E. Description | F. Contractual due date* | G. Prin, int & esc paid due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | M. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*(Table body — figures illegible due to image quality)*

Mortgage Proof of Claim Attachment
Bankruptcy File Date:  05/23/2016

* Contractual due date changed to the next payment due when payment is received.

Part 5: Loan Payment History from First Date of Default

Claim 5     Filed 10/27/16     Desc Main Document     Page 19 of 55

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date* | G. Prin. int. & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Table data illegible at available resolution.*

Official Form 410A

Date: 10/18/2016

* Contractual due date changes by the next payment due when payment is received.

Mortgage Proof of Claim Attachment

Bankruptcy File Date: 05/26/2016

Case 16-14007-mdc    Claim 5    Filed 10/27/16    Desc Main Document    Page 20 of 55

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Prin, int & esc point due balances | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | *Funds Were Applied/Amount Incurred* | | | | | | | *Balance After Amount Received or Incurred* | | | | |
| 9/29/2013 | 0.00 | 1981.50 | 0.00 | Recovery of Escrow Advance Balance | 4/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (461.28) | 0.00 | 112,041.99 | 308.14 | (1,251.19) | 0.00 | .00 |
| 9/13/2013 | 950.00 | 0.00 | 0.00 | Contractual Payment due | 5/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,041.99 | 0.00 | (1,251.19) | 0.00 | .00 |
| 8/4/2013 | 0.00 | 95.50 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 9/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (95.50) | 0.00 | 112,041.99 | 0.00 | (1,346.19) | 2.03 | .00 |
| 8/4/2013 | 0.00 | 0.00 | 0.00 | PMI Disbursement | 5/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,041.99 | 0.00 | (1,407.69) | 0.00 | .00 |
| 6/24/2013 | 0.00 | (52.30) | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 6/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 20.71 | 0.00 | 112,041.99 | 0.00 | (1,407.69) | 0.00 | .00 |
| 6/24/2013 | 0.00 | 78.71 | 0.00 | HAZARD INSURANCE | 5/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (72.71) | 0.00 | 112,041.99 | 0.00 | (1,375.39) | 0.00 | .00 |
| 6/24/2013 | 0.00 | (72.71) | 0.00 | Payment required escrow amount received | 6/1/2013 | 0.00 | 190.17 | 0.00 | 0.00 | 401.23 | 0.00 | 111,878.82 | 0.00 | (950.00) | 0.00 | .00 |
| 6/27/2013 | 0.00 | 1,205.00 | 0.00 | Recovery of Escrow Adv from Borrower | 6/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (421.28) | 0.00 | 111,878.82 | 0.00 | (986.30) | 0.00 | .00 |
| 6/27/2013 | 0.00 | (461.28) | 0.00 | Contractual Payment due | 7/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,878.82 | 0.00 | (986.30) | 0.00 | .00 |
| 6/1/2013 | 950.00 | 0.00 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 7/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 68.35 | 0.00 | 111,878.82 | 0.00 | (986.30) | 0.00 | .00 |
| 7/9/2013 | 0.00 | 68.35 | 0.00 | PMI Disbursement | 6/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (58.30) | 0.00 | 111,878.82 | 0.00 | (945.30) | 0.00 | .00 |
| 7/9/2013 | 0.00 | (58.30) | 0.00 | Contractual Payment Amt | 7/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,878.82 | 347.73 | (1,053.30) | 0.00 | .00 |
| 6/27/2013 | 950.00 | 0.00 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 305.30 | 0.00 | 111,878.82 | 347.73 | (1,643.30) | 0.00 | .00 |
| 6/27/2013 | 0.00 | (305.30) | 0.00 | PMI Disbursement | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (58.30) | 0.00 | 111,878.82 | 347.73 | (1,998.59) | 0.00 | .00 |
| 4/19/2013 | 0.00 | 0.00 | 28.09 | Fee Payment or Assessment | 12/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28.09 | 111,878.82 | 347.73 | (1,998.59) | 28.09 | .00 |
| 4/10/2013 | 0.00 | 976.00 | 0.00 | Payment to behavior or subprime recd | 7/1/2013 | 2,410.00 | 0.00 | 0.00 | 0.00 | 0.01 | 270.00 | 111,878.82 | 347.73 | (1,000.59) | 28.09 | 878.00 |
| 8/1/2013 | 950.00 | 0.00 | 0.00 | Contractual Payment Amt | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,878.82 | 1,004.65 | (1,000.59) | 28.09 | 878.00 |
| 6/24/2013 | 0.00 | 58.20 | 0.00 | ESCROW ADVANCE FOR DISBURSEMENT | 9/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 58.30 | 0.00 | 111,878.82 | 1,004.65 | (1,000.59) | 28.09 | 978.00 |
| 8/8/2013 | 0.00 | (58.30) | 0.00 | PMI Disbursement | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (58.30) | 0.00 | 111,878.82 | 1,004.65 | (1,739.60) | 28.09 | 978.00 |
| 9/12/2013 | 0.00 | 928.80 | 0.00 | Payment to subprime suspense acct | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 928.80 | 111,878.82 | 1,004.65 | (1,105.60) | 28.09 | 1,225.00 |
| 8/13/2013 | 0.00 | 1,365.00 | 0.00 | Payment of amounts from Borrower | 8/12/2013 | 0.00 | 106.97 | 347.73 | 0.00 | 491.26 | 0.00 | 111,765.85 | 0.00 | (964.98) | 28.09 | .00 |
| 8/13/2013 | 0.00 | (461.28) | 0.00 | Recovery of Escrow Adv from Borrower | 8/1/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (461.28) | 0.00 | 111,765.85 | 1,004.65 | (964.98) | 28.09 | .00 |
| 8/13/2013 | 0.00 | 1,215.00 | 0.00 | Payment TCD used to pay escrow shortage | 8/1/2013 | 0.00 | 0.00 | 546.20 | 0.00 | 668.30 | 0.00 | 111,544.07 | 1,054.65 | (163.30) | 28.09 | .00 |
| 8/13/2013 | 0.00 | (591.30) | 0.00 | Recovery of Escrow Adv from Borrower | 8/13/2013 | 0.00 | 0.00 | 0.00 | 0.00 | (591.24) | 0.00 | 71,544.07 | 1,054.65 | (162.30) | 28.09 | .00 |
| 9/29/2013 | 0.00 | 1,265.00 | 0.00 | Payment required escrow amount received | 9/1/2013 | 0.00 | 161.68 | 540.16 | 0.00 | 401.28 | 0.00 | 111,378.47 | 1,090.05 | 228.95 | 28.09 | .00 |

* Contractual due date changes to the next payment due when payment is received

Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int. & esc past due balance | H. Amount to principal | H. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*(Account Activity / "How Funds Were Applied/Amount Incurred" / "Balance After Amount Received or Incurred" — tabular data not legibly readable)*

Official Form 410A
Date: 12/18/2016

* Contractual due date changes to the next payment due when payment is received.

Mortgage Proof of Claim Attachment
Bankruptcy File Date: 05/26/2016

Part 5: Loan Payment History from First Date of Default

Account Activity

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Official Form 410A

How Funds Were Applied/Amount Incurred

Balance After Amount Received or Incurred

Mortgage Proof of Claim Attachment

Bankruptcy File Date:   05/26/2016

Part 5: Loan Payment History from First Date of Default    Claim 5    Filed 10/27/16    Desc Main Document    Page 24 of 55

| A. Date | Account Activity | | | | F. Contractual due date * | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |

Official Form 410A
Date: 10/18/2016

Mortgage Proof of Claim Attachment
Bankruptcy File Date: 05/25/2016

* Contractual due date changes to the next payment due when payment is received.

Part 5: Loan Payment History for           Claim 5    Filed 10/27/16    Desc Main Document

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | | | Balance After Amount Received or Incurred | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date * | G. Fun, prin & misc pmt due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees and charges | K. Amount to ... charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |

Official Form 410A

Date: 10/16/2016

Mortgage Proof of Claim Attachment

Bankruptcy File Date: 05/26/2016

* Contractual due date changes to the next payment due when payment is received.

Part 5. Loan Payment History for the 4007 Claim

Claim 5   Filed 10/27/16   Desc Main Document   Page 26 of 55

How Funds Were Applied/Amount Incurred

Balance After Amount Received or Incurred

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin./Int. & esc. paid due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Official Form 410A

Date: 10/18/2016

* Contractual due date changes to the next payment due when payment is received

Mortgage Proof of Claim Attachment

Bankruptcy File Date: 05/29/2016

Part 5: Loan Payment History from First Date of Default

Case 16-14007-mdc   Claim 5   Filed 10/27/16   Desc Main Document   Page 27 of 55

Account Activity

How Funds Were Applied/Amount Incurred | Balance After Amount Received or Incurred

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | PACAHO INSURANCE | | | | | | | | | | | | |
| | $902.31 | 0.00 | 0.00 | Contractual Payment Amt | 3/1/2016 | 24,486.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,018.61 | 11,075.10 | (7,268.97) | 8,864.81 | 0.00 |
| | 0.00 | 0.00 | 150.00 | Cap'd Disbursement-Escrow advance | 3/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 | 0.00 | 111,018.61 | 11,833.20 | (7,368.97) | 6,496.95 | 0.00 |
| | 0.00 | 158.34 | 0.00 | Escrow Advance For Disbursement | 3/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,018.61 | 11,833.21 | (7,368.63) | 6,342.85 | 0.00 |
| | 0.35 | (158.20) | 0.00 | PMI Disbursement | 3/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,018.61 | 11,833.21 | (7,528.61) | 6,342.85 | 0.00 |
| | 0.00 | 0.00 | 36.88 | Fee Payment or Assessment | 3/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 36.88 | 0.00 | 111,018.61 | 11,833.21 | (7,528.61) | 6,510.25 | 0.00 |
| | 0.00 | 0.00 | 150.00 | Cash Disbursements from escrow advance | 3/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,018.61 | 11,833.21 | (7,788.61) | 6,548.54 | 0.00 |
| | 909.00 | 0.00 | 0.00 | Contractual Payment Amt | 4/1/2016 | 36,434.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 111,018.61 | 11,833.21 | (7,258.67) | 6,564.54 | 0.00 |
| | 0.00 | 0.00 | 575.00 | Cash Disbursements from escrow advance | 4/1/2016 | 0.00 | 2.00 | 0.00 | 0.00 | 275.00 | 0.00 | 111,026.51 | 12,413.77 | (7,758.27) | 6,969.54 | 0.00 |
| | 0.00 | 98.30 | 0.00 | Escrow Advance For Disbursement | 4/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 95.31 | 0.00 | 111,018.61 | 13,411.77 | (7,203.01) | 9,559.54 | 0.00 |
| | 0.00 | (98.30) | 0.00 | PMI Disbursement | 4/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 9.95 | 0.00 | 111,018.61 | 15,411.77 | (7,321.60) | 9,559.54 | 0.00 |
| | 0.00 | 0.00 | 38.80 | Fee Payment or Assessment | 4/1/2016 | 0.00 | 0.00 | 0.00 | 0.00 | 36.84 | 0.00 | 111,018.61 | 15,411.77 | (7,321.91) | 9,975.23 | 0.00 |

Official Form 410A
Date: 10/16/2016
* Contractual due date changed to the next payment due when payment is received.

Mortgage Proof of Claim Attachment
Bankruptcy File Date:   05/26/2016

Page 24 of 24
12:20:26PM

PA HOUSING FINANCE AGENCY
PO BOX 15057
211 NORTH FRONT STREET
HARRISBURG, PA 17105-5057
1-800-346-3597

10/19/16

TIGIST GUEBREYES
1336 KIMBERLY DR
PHILADELPHIA PA 19151-2833

RE: LOAN #▮▮▮▮▮
1336 KIMBERLY DRIVE
PHILADELPHI PA 19151-2833

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

This is a statement of your actual escrow account transactions since
your last annual analysis statement or initial disclosure. This state-
ment reflects the anticipated payments and disbursements that were
projected and your actual payments and disbursements for the last
cycle. Please keep this statement to compare to your next annual
analysis statement.

Effective Date: 11/01/16                         11/16 Thru 10/17

### ACCOUNT HISTORY

Previous Payment:   P&I . . . . . . . . :      713.70
                    Escrow . . . . . . . :      322.30
                    Discretionary Items:           .00
                    Total . . . . . . . :       1,036.00

| Month | Pmt to Esc act Proj | Actual | Pmt from Esc act Proj | Actual | Desc | Escrow Balance Proj | Actual |
|-------|------|------|------|------|------|------|------|
| Starting Balance | | | | | | 659.46 | 7377.91- |
| Ju,16 | 276.10 | 322.30*E | | | PAYMENT | 935.56 | 7055.61- |
| Ju,16 | | | 56.30 | | PMI | 879.26 | 7055.61- |
| Ju,16 | | | | 56.30* | PMI | 879.26 | 7111.91-< |
| Aug,16 | 276.10 | 322.30*E | | | PAYMENT | 1155.56 | 6789.61- |
| Aug,16 | | | 56.30 | | PMI | 1099.06 | 6789.61- |
| Aug,16 | | | | 56.30* | PMI | 1099.06 | 6845.91- |
| Sep,16 | 276.10 | 322.30*E | | | PAYMENT | 1375.16 | 6523.61- |
| Sep,16 | | | 56.30 | | PMI | 1318.86 | 6523.61- |
| Sep,16 | | | | 56.30* | PMI | 1318.86 | 6579.91- |
| Sep,16 | | 265.30E | | | PAYMENT | 1318.86 | 6314.61- |
| Sep,16 | | 265.30E | | | PAYMENT | 1318.86 | 6049.31- |
| Sep,16 | | 265.30E | | | PAYMENT | 1318.86 | 5764.01- |
| Sep,16 | | 265.30E | | | PAYMENT | 1318.86 | 5518.71- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 5271.41- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 5024.11- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 4776.81- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 4529.51- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 4282.21- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 4034.91- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 3787.61- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 3540.31- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 3293.01- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 3045.71- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 2798.41- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 2551.11- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 2303.81- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 2056.51- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 1809.21- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 1561.91- |

LOAN #

| Month | Pmt to Esc act Proj | Actual | Pmt from Esc act Proj | Actual | Desc | Escrow Balance Proj | Actual |
|---|---|---|---|---|---|---|---|
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 1314.61- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 1067.31- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 820.01- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 572.71- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 325.41- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 78.11- |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 169.19 |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 416.49 |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 663.79 |
| Sep,16 | | 247.30E | | | PAYMENT | 1318.86 | 911.09 |
| Oct,16 | 276.10 | 322.30*E | | | PAYMENT | 1594.96 | 1233.39 |
| Oct,16 | | | 56.30 | 56.30E | PMI | 1538.66 | 1177.09 |
| Nov,16 | 276.10 | | 56.30 | | PAYMENT | 1814.76 | 1177.09 |
| Nov,16 | | | 56.30 | | PMI | 1758.46 | 1177.09 |
| Dec,16 | 276.10 | | 56.30 | | PAYMENT | 2034.56 | 1177.09 |
| Dec,16 | | | 56.30 | | PMI | 1978.26 | 1177.09 |
| Jan,17 | 276.10 | | 56.30 | | PAYMENT | 2254.36 | 1177.09 |
| Jan,17 | | | 56.30 | | PMI | 2198.06 | 1177.09 |
| Feb,17 | 276.10 | | 56.30 | | PAYMENT | 2474.16 | 1177.09 |
| Feb,17 | | | 56.30 | | PMI | 2417.86 | 1177.09 |
| Feb,17 | | | 1356.70 | | SCHOOL/LOCA | 1061.16 | 1177.09 |
| Mar,17 | 276.10 | | 56.30 | | PAYMENT | 1337.26 | 1177.09 |
| Mar,17 | | | 56.30 | | PMI | 1280.96 | 1177.09 |
| Apr,17 | 276.10 | | 56.30 | | PAYMENT | 1557.06 | 1177.09 |
| Apr,17 | | | 1280.95 | | PMI | 1500.76 | 1177.09 |
| Apr,17 | | | 1280.95 | | HAZARD INS | 219.81 < | 1177.09 |
| May,17 | 276.10 | | 56.30 | | PAYMENT | 495.91 | 1177.09 |
| May,17 | | | 56.30 | | PMI | 439.61 | 1177.09 |
| Jun,17 | 276.10 | | 56.30 | | PAYMENT | 715.71 | 1177.09 |
| Jun,17 | | | 56.30 | | PMI | 659.41 | 1177.09 |
| Totals | | 8,780.20 | | 225.20 | | | |

3,313.20        3,313.25

Under Federal Law (RESPA) the lowest monthly balance in your escrow account should not exceed $552.20 or 1/6th of the total annual projected disbursement from your escrow account, unless your mortgage documents or state law specifies a lower amount. When your escrow balance reaches its lowest point during the account cycle, that balance is targeted to be your cushion amount. Under your Mortgage Contract or State or Federal Law, your targeted low point in your escrow account is $219.81 and your actual low point was $7,111.91-; the amounts are indicated with an arrow (<).

By comparing the projected escrow payments with the actual escrow payments you can determine where a difference may have occurred. An asterisk (*) indicates a difference in either the amount or date. The estimated payments to escrow and payments from escrow are indicated with an (E).

PROJECTION FOR NEXT CYCLE

Projected Annual Disbursements

| | |
|---|---|
| PMI | 675.60 |
| HAZARD INS | 1,280.95 |
| SCHOOL/LOCAL | 1,356.70 |
| Total | 3,313.25 |

New Escrow Deposit        3,313.25  /12=        276.10

The escrow deposit is 1/12th of your total annual projected escrow disbursements. Your escrow balance may contain a cushion. A cushion is an amount of money held in your escrow account to prevent your escrow balance from being overdrawn when increases in the disbursements occur. Under Federal Law (RESPA) the lowest monthly balance in your escrow account should not exceed 1/6th of the total annual anticipated disbursements from your escrow account, unless your mortgage documents or state law specifies a lower amount. The

LOAN #

cushion amount in your escrow account is $219.81.   When your escrow balance
reaches its lowest point during the account cycle, that balance is targeted to
be your cushion amount and is marked with an arrow (<).

| Month Starting | Payments to Escrow Acct Balance | Payments from Escrow Acct | Description | Curr Bal | Reg Bal |
|---|---|---|---|---|---|
| Nov.16 | 276.10 | | PAYMENT | 1,177.09 | 1,538.66 |
| Nov.16 | | 56.30 | PMI | 1,453.19 | 1,814.76 |
| Dec.16 | 276.10 | | PAYMENT | 1,396.89 | 1,758.46 |
| Dec.16 | | 56.30 | PMI | 1,672.99 | 2,034.56 |
| Jan.17 | 276.10 | | PAYMENT | 1,616.69 | 1,978.26 |
| Jan.17 | | 56.30 | PMI | 1,892.79 | 2,254.36 |
| Feb.17 | 276.10 | | PAYMENT | 1,836.49 | 2,198.06 |
| Feb.17 | | 56.30 | PMI | 2,112.59 | 2,474.16 |
| Feb.17 | | 1,356.70 | SCHOOL/LOCAL | 2,056.29 | 2,417.86 |
| Mar.17 | 276.10 | | PAYMENT | 699.59 | 1,061.16 |
| Mar.17 | | 56.30 | PMI | 975.69 | 1,337.26 |
| Apr.17 | 276.10 | | PAYMENT | 919.39 | 1,280.96 |
| Apr.17 | | 56.30 | PMI | 1,195.49 | 1,557.06 |
| Apr.17 | | 1,280.95 | HAZARD INS | 139.19 | 500.76 |
| May.17 | 276.10 | | PAYMENT | 141.76- | 219.81 | <
| May.17 | | 56.30 | PMI | 134.34 | 495.91 |
| Jun.17 | 276.10 | | PAYMENT | 78.04 | 439.61 |
| Jun.17 | | 56.30 | PMI | 354.14 | 715.71 |
| Jul.17 | 276.10 | | PAYMENT | 297.84 | 659.41 |
| Jul.17 | | 56.30 | PMI | 573.94 | 935.51 |
| Aug.17 | 276.10 | | PAYMENT | 517.64 | 879.21 |
| Aug.17 | | 56.30 | PMI | 793.74 | 1,155.31 |
| Sep.17 | 276.10 | | PAYMENT | 737.44 | 1,099.01 |
| Sep.17 | | 56.30 | PMI | 1,013.54 | 1,375.11 |
| Oct.17 | 276.10 | | PAYMENT | 957.24 | 1,318.81 |
| Oct.17 | | 56.30 | PMI | 1,233.34 | 1,594.91 |
| Total | 3,313.20 | 3,313.25 | | 1,177.04 | 1,538.61 |

According to this analysis your escrow balance should be $1,538.66,  but your
projected escrow balance is $1,177.09.  Therefore you have a shortage of
$361.57.    This shortage may be collected from you over a 12 month period
unless the shortage is less than 1 month's deposit, in which case we have the
additional option of requesting payment within 30 days. We have decided to
collect it over 12 month(s).

You have a deficiency of $7,546.81.   This deficiency may be collected from
you over a period of 2 to 00 months unless the deficiency is less than 1
month's deposit, in which case we have the additional option of requesting
payment within 1 month. We have decided to collect it over 00 month(s).

Below is your new monthly payment breakdown effective 11/01/16.

| | | | |
|---|---|---|---|
| Estimated Low Point: | 141.76- | New P&I . . . . . . .: | 713.70 |
| RESPA Low Point . .: | 552.20 | New Esc Pmt . . . . .: | 276.10 |
| Doc/St Low Point. .: | 219.81 | Discretionary Items Pmt: | .00 |
| Total Shortage. . .: | 361.57 | Shortage Spread .: . . .: | 30.13 |
| Spread Months . . .: | 12 | Deficiency Spread . . .: | .00 |
| Deficiency. . . . .: | 7,546.81 | Payment Rnd Adj . . .: | .07 |
| Def Spread Months .: | 00 | Total Payments. . . . .: | 1,020.00 |

*99O*

Please review this statement closely - your mortgage payment may be
affected. This statement reflects any changes in your mortgage
payment, any surplus refunds, or any shortage or deficiency that you
must pay. It also shows the anticipated escrow activity for the next
12 months. If your loan is an adjustable rate mortgage, the principal
interest portion of your payment may change within this cycle in
accordance with your loan documents. If you have any questions, please
call our customer service department.



# NOTE



July 30, 2008                          Philadelphia                          PENNSYLVANIA
[Date]                                    [City]                                    [State]

1336 Kimberly Drive
Philadelphia, PA   19151
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 120,650.00         (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is **Sovereign Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of       5.675 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st       day of each month beginning on **September 01, 2008**    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on **August 01, 2038**         , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 1130 **Berkshire Blvd., Wyomissing, PA   19610**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 713.70

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: TG       VMPSN 0303.01
                    Page 1 of 3

*Guebreyes*

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: TC̶

Form 3200 1/01
VMP5N 05803.01
Page 2 of 3

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Tigist Guebreyes                   -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                   -Borrower                                          -Borrower

PAY TO THE ORDER OF
PENNSYLVANIA HOUSING FINANCE AGENCY
WITHOUT RECOURSE
SOVEREIGN BANK

_____ (Seal)          _____ (Seal)
CAROL A SHAFFER, BANKING OFFICER   -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                   -Borrower                                          -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Initials: ____                    Form 3200 1/01
                                  VMPBN (0803).01
                                  Page 3 of 3

**51946869**
Page:     1 of 16
08/04/2008 11:15AM

Record and Return to
City Line Abstract Co.
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004

This Document Recorded
08/04/2008
11:15AM
Doc Code: M   Commissioner of Records, City of Philadelphia
Recorded Electronically by Simplifile

Doc Id: 51946869
Receipt #: 730035
Rec Fee: 126.50

Prepared by: Heidi Merritt

101 S. George Street

York, PA 17401

(717) 771-9430

After Recording Return To:

Sovereign Bank,

601 Penn Street

Reading, PA 19601

PIN / Tax ID Number:

*[Space Above This Line For Recording Data]*

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated
July 30          , 2008     , together with all riders to this document.
(B) "Borrower" is Tigist Guabreyes
Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  Sovereign Bank          . Lender is a
Federal Savings Bank          organized and existing under the laws of
The United States of America          Lender's address is
1130 Berkshire Blvd., Wyomissing, PA 19610          . Lender is the mortgagee
under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated
July 30          , 2008. The Note states that Borrower owes Lender
One Hundred Twenty Thousand Six Hundred Fifty And Zero/100          Dollars
(U.S. $ 120,650.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than August 01, 2038          .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note and all sums due under this Security Instrument, plus interest.

PHFA Revised 3/2008

Page 1 of 14

PHFA MORTGAGE · SB 6994
REV 04/05

Case 16-14007-mdc    Doc 29    Filed 12/03/16    Entered 12/03/16 15:13:45    Desc Main
Case 16-14007-mdc    Claim 5    Document    Page 37 of 57    Document    Page 35 of 55

51946869
Page:    2 of 16
08/04/2008 11:15AM

(G) **"Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condminium Rider  ☐ Planned Unit Development Rider
☐ 1-4Family Rider  ☐ Second Home Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider  ☐ Other(s) [specify] _____

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers and automated clearinghouse tranfers.

(K) **"Escrow Items"** means those items that are described in Section 3

(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the

County _____ of Philadelphia _____
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
which currently has the address of 1336 Kimberly Drive _____
                                                    [Street]
Philadelphia _____ , Pennsylvania 19151 _____ ("Property Address"):
        [City]                                    [Zip Code]

PHFA Revised 3/2008

Page 2 of 14

PHFA MORTGAGE - SB 4994
REV 04/00

51946869
Page:    3 of 16
08/04/2008 11:15AM

## Schedule C
## Description and Recital

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 34th Ward of the City of Philadelphia and described according to a Survey and Plan of Properties in "Overbrook Park No. 2 inches, made for Suburban Counties Realty Corporation by George T. Shegog, Surveyor and Regulator of the 7th District on Feb. 28, 1948, which plan was recorded in Philadelphia on March 3, 1948 in Plan Book No. 4 Page 17, Being Lot No. 396 and described as follows, to wit:-

SITUATE on the Southwesterly side of Kimberly Drive (46 feet wide) at the distance of 380 feet Southeastwardly from the Southeasterly side of Malvern Avenue (58 feet wide) both extended.

CONTAINING in front or breadth on the said Southwesterly side of Kimberly Drive Southeastward 16.030 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said Kimberly Drive, the Northwesterly and Southeasterly line thereof passing through the party walls between these premises and the premises adjoining on the Northwest and Southeast respectively, 100 feet to the center line of a certain 15 feet wide driveway paved with concrete which is parallel with the said Kimberly Drive and leading Northwestwardly into the said Malvern Avenue and Southeastwardly into Brockton Road (55 feet wide).

BEING known as 1336 Kimberly Drive.

TOGETHER with the free and common use, right, liberty and privilege of a certain driveway, as shown on the aforesaid plan, laid out across the rear of these and adjoining premises as and for a driveway, passageway and watercourse at all times, hereafter, forever, in common with the owners, tenants and occupiers of the lots of ground bounding thereon and entitled to the use thereof. SUBJECT, however, to the proportionate part of the expense of keeping the said driveway in good order, condition and repair at all times hereafter, forever.

Being the same premises which Mary Hendzel, by her Attorney in Fact Arnold Rothstein by Deed dated 8/29/1994 and recorded 9/9/1994 in Philadelphia County in Deed Book VCS 672 Page 526 conveyed unto Gloria J. Hopson and Thelma Macklin, as joint tenants with the right of survivorship , in fee.

AND being the same premises which Gloria J. Hopson and Thelma Macklin by Deed dated 9/6/2006 and recorded 11/3/2006 in Philadelphia County as Document No. 51564365 conveyed unto Gloria J. Hopson,Thelma Macklin and Trudy Holloway, as joint tenants with the right of survivorship, in fee.
($1.00 Deed)

Commitment                                                                 Page 6 of 6

51946869
Page:     4 of 16
08/04/2008 11:15AM

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payment(s) are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payment(s) in the future, but Lender is not obligated to apply such payment(s) at the time such payment(s) are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

FHFA MORTGAGE - SB 4994
REV 04/06

51946869
Page:    5 of 16
08/04/2008 11:15AM

3. **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA; and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

PHFA MORTGAGE - SB #994
REV 04/06

51946869
Page:     6 of 16
08/04/2008 11:15AM

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Case 16-14007-mdc   Doc 29   Filed 12/03/16   Entered 12/03/16 15:13:45   Desc Main
Case 16-14007-mdc   Claim 5 Document 27 Page 42 of 57 Document   Page 40 of 55

51946869
Page:    7 of 16
08/04/2008 11:15AM

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument; and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Page 6 of 14

PHFA Revised 2/2008

PHFA MORTGAGE - SB 4894
REV 04/08

51946869
Page:     8 of 16
08/04/2008 11:13AM

**9. Protection of Lender's Interest in the Property and Rights Under this Security
Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this
Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in
the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy,
probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this
Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property,
then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in
the Property and rights under this Security Instrument, including protecting and/or assessing the
value of the Property and securing and/or repairing the Property. Lender's actions can include, but
are not limited to: (a) paying any sums secured by a lien which has priority over this Security
Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in
the Property and/or rights under this Security Instrument, including its secured position in a
bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to
make repairs, change locks, replace or board up doors and windows, drain water from pipes,
eliminate building or other code violations or dangerous conditions and have utilities turned on or off.
Although Lender may take action under this Section 9, Lender does not have to do so and is not
under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or
all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of
Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from
the date of disbursement and shall be payable, with such interest, upon notice from Lender to
Borrower requesting payment.
If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.
If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless
Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the
Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for
any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the
mortgage insurer that previously provided such insurance and Borrower was required to make
separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the
premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in
effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously
in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage
Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the
separately designated payments that were due when the insurance coverage ceased to be in effect.
Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of
Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan
is ultimately paid in full and Lender shall not be required to pay Borrower any interest or earnings on
such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance
coverage (in the amount and for the period that Lender requires) provided by an insurer selected by
Lender again becomes available, is obtained, and Lender requires separately designated payments
toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of
making the Loan and Borrower was required to make separately designated payments toward the
premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage
Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for
Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender
providing for such termination or until termination is required by Applicable Law. Nothing in this
Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Case 16-14007-mdc   Doc 29   Filed 12/03/16   Entered 12/03/16 15:13:45   Desc Main
Case 16-14007-mdc   Claim 5 Document 27/ Page 44 of 57   Document   Page 42 of 55

51946869
Page:    9 of 16
08/04/2008 11:15AM

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

51946869
Page:    10 of 16
08/04/2008 11:15AM

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

51946869
Page:  11 of 16
05/04/2008 11:15AM

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrower unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

51946869
Page:  12 of 18
08/04/2008 11:15AM

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

PHFA Revised 3/2008

Page 11 of 14

PHFA MORTGAGE - SB 4994
REV 04/08

51946869
Page:   13 of 16
08/04/2008 11:15AM

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances**. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the**

51946869
Page: 14 of 16
08/04/2008 11:15AM

right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

THE BORROWER HEREBY INCORPORATES THE FOLLOWING COVENANTS IN THE MORTGAGE DELETING ANY INCONSISTENT PROVISIONS CONTAINED THEREIN:

28. Transfer of Property, Owner Occupancy, Assumption of Mortgage.

(a) Acceleration of Debt. In the following situations, all sums secured by this mortgage shall immediately be due and payable:

(b) Sale or Transfer of Property. If all the Property or an interest therein is sold, leased, or transferred by the Borrower, excluding: (1.) the creation of a lien or encumbrance subordinate to this mortgage; (2.) the creation of a security interest for household appliances; (3.) a transfer resulting from a decree of Divorce or annulment, legal separation agreement or from an incidental property settlement agreement by which the spouse of a borrower becomes the owner of the property; or (4.) a transfer by devise, descent or by operation of law upon the death of a joint tenant or tenant by entireties.

(c) Owner Occupancy. If the property for any reason is no longer owner-occupied.

(d) Assumptions. The originating Lender, its successors and assigns may (but is not obligated to) waive such acceleration of the mortgage debt an allow an assumption of the mortgage debt by a purchaser of the property if, prior to sale or transfer, Lender:

(1.) has received from Borrower a written notification that Borrower intends to sell or otherwise convey the property and requests that Lender waive its right to accelerate the debt and permit an assumption of the debt by the purchaser(s);

(2.) has received a complete application for loan assumption from the purchaser(s);

(3.) reaches agreement with the purchaser(s) on the interest rate to be paid on the sums secured by this mortgage;

PHFA MORTGAGE - SS 4998
REV 0498

51946869
Page: 15 of 16
08/04/2008 11:15AM

(4.) determines that the loan can be assumed and the purchaser(s) is/are qualified to be Mortgagor under the eligibility criteria that exist for the particular type of loan involved (i.e., PHFA's Mortgage Revenue Bond Program, VA Mortgage, FHA Mortgage, RHS Mortgage, or a mortgage originated in connection with any other PHFA Single Family Program):

(5.) enters into a written assumption agreement among itself, the Borrower and the purchaser(s).

(e) **Misrepresentations or Omissions.** Borrower also agrees and understands that Lender has been induced to make the loan secured by this mortgage based upon the statements and representations in the loan application and accompanying affidavits, documents and statements signed by the Borrower in connection with this loan. Borrower hereby covenants and warrants that such statements and representations were true, correct and complete when made and are true, correct and complete as of the date of this mortgage. If such statement or representations are untrue, incorrect or incomplete (whether willful, inadvertent or otherwise) the Borrower shall be in breach of this mortgage and Lender shall have the right to exercise its remedies under this mortgage (including the right to institute foreclosure proceedings against the mortgaged property) and shall have the right to adjust the interest rate on the outstanding principal balance (and any corresponding increase in the monthly payment of principal and interest) to the then prevailing interest rate as determined by the Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    Borrower   Tagist Guebreyes

                                                    _____ (Seal)
                                                    Borrower


_____ [Space Below This Line For Acknowledgment] _____

Commonwealth of Pennsylvania
                                    ss
County of Philadelphia

On this, the 30th day of July, 2008 ____, before me, the undersigned officer, personally appeared Tigist Guebreyes _____
known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission Expires: _____    _____

PHFA Revised 2/2008

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
GINA F BELL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires July 8, 2009

Page 14 of 14

PHFA MORTGAGE : BB 4004
REV 04/08

51946869
Page:   16 of 16
06/04/2008 11:15AM

Certificate of Residence

I, Gina Bell, do hereby certify that the correct address of the within named lender is
1130 Berkshire Blvd., Wyomissing, PA 19610

Witness my hand this 2nd day of   June 2008.

_____
Gina Bell                    Agent of Mortgagee

Record and Return to
City Line Abstract Co.
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Prepared by and Return to:
Heidi Merritt

**51946870**
Page:    1 of 3
08/04/2008 11:15AM

(Contact and Department Name)

Sovereign Bank

601 Penn Street

Reading, PA 19601
(Address of Lender)

This Document Recorded
08/04/2008
11:15AM
Doc Code: A   Commissioner of Records, City of Philadelphia
Recorded Electronically by Simplifile

Doc Id: 51946870
Receipt #: 730019
Rec Fee: 124.50

PIN/ID Number:

*Above space is intentionally left blank for recording data.*

## ASSIGNMENT OF MORTGAGE

For value received, the undersigned, SOVEREIGN BANK, (Originating Lender) does hereby grant, sell, convey, assign and deliver unto the PENNSYLVANIA HOUSING FINANCE AGENCY, its successors and assigns, the following described Mortgage, together with the Note secured thereby:

Name of Original Mortgagor(s):  Tigist Guebrayes

Secured by the real property located at:  1336 Kimberly Drive, Philadelphia, PA  19151
(Attach Legal Description if required by Recorder's Office)
Tax Parcel Identification Number: _____  Municipality: _____

Original Principal Amount of Mortgage: $120,650.00      County Recorded in: Philadelphia

Mortgage Recording Date: _____      Record Book _____  Page _____

Instrument Number: _____      Municipality: _____

IN WITNESS WHEREOF, the undersigned, has caused this **Assignment of Mortgage** to be executed by its duly authorized officer.

Date:        07/30/08

SOVEREIGN BANK
(ORIGINATING LENDER)

By: _Loren K Reed_

Title: _AVP_

COMMONWEALTH OF PENNSYLVANIA        :
                                   : SS
COUNTY OF  _York_                  :

On this, the  30th  day of  July , 20 08 , before me the undersigned officer, personally appeared  _Loren K Reed_ , an authorized officer of  Sovereign Bank , known to me (or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he/she, being authorized to do so, executed the foregoing instrument for the purposes therein contained.)

In witness whereof, I have hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Melinda K. Smith, Notary Public
City Of York, York County
My Commission Expires June 22, 2010
Member, Pennsylvania Association of Notaries

December 2004

PHFA Form 20

PHFA ASSIGNMENT - SB 4415
REV 09/08

51946870
Page:    2 of 3
08/04/2008 11:15AM

## CERTIFICATE OF RESIDENCE

I hereby certify that the principal place of business and complete post office address of the within named Assignee is
PENNSYLVANIA HOUSING FINANCE AGENCY, Single Family Programs Division, 211 North Front Street Harrisburg, PA
17101 AFTER RECORDATION, THIS ASSIGNMENT IS TO BE MAILED TO THE ORIGINATING LENDER AT:

Sovereign Bank

601 Penn Street

Reading, PA 19601

Heidi Merritt

Authorized Officer

December 2004

PHFA ASSIGNMENT CHESTER - SB 0415
REV 08/06

51946870
Page:    3  of  3
08/04/2008 11:15AM

## Schedule C
## Description and Recital

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 34th Ward of the City of Philadelphia and described according to a Survey and Plan of Properties in "Overbrook Park No. 2 inches, made for Suburban Counties Realty Corporation by George T. Shegog, Surveyor and Regulator of the 7th District on Feb. 28, 1948, which plan was recorded in Philadelphia on March 3, 1948 in Plan Book No. 4 Page 17, Being Lot No. 396 and described as follows, to wit:-

SITUATE on the Southwesterly side of Kimberly Drive (46 feet wide) at the distance of 380 feet Southeastwardly from the Southeasterly side of Malvern Avenue (58 feet wide) both extended.

CONTAINING in front or breadth on the said Southwesterly side of Kimberly Drive Southeastward 16.030 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said Kimberly Drive, the Northwesterly and Southeasterly line thereof passing through the party walls between these premises and the premises adjoining on the Northwest and Southeast respectively, 100 feet to the center line of a certain 15 feet wide driveway paved with concrete which is parallel with the said Kimberly Drive and leading Northwestwardly into the said Malvern Avenue and Southeastwardly into Brockton Road (56 feet wide).

BEING known as 1336 Kimberly Drive.

TOGETHER with the free and common use, right, liberty and privilege of a certain driveway, as shown on the aforesaid plan, laid out across the rear of these and adjoining premises as and for a driveway, passageway and watercourse at all times, hereafter, forever, in common with the owners, tenants and occupiers of the lots of ground bounding thereon and entitled to the use thereof. SUBJECT, however, to the proportionate part of the expense of keeping the said driveway in good order, condition and repair at all times hereafter, forever.

Being the same premises which Mary Hendzel, by her Attorney in Fact Arnold Rothstein by Deed dated 8/29/1994 and recorded 9/9/1994 in Philadelphia County in Deed Book VCS 672  Page 526 conveyed unto  Gloria J. Hopson and Thelma Macklin, as joint tenants with the right of survivorship , in fee.

AND being the same premises which Gloria J. Hopson and Thelma Macklin by Deed dated 9/6/2006 and recorded 11/3/2006 in Philadelphia County as Document No. 51564365 conveyed unto Gloria J. Hopson,Thelma Macklin and Trudy Holloway, as joint tenants with the right of survivorship, in fee.
($1.00 Deed)

eRecorded in Philadelphia PA  Doc Id: 52226103
06/21/2010 03:01PM          Receipt#: 913272
Page 1 of 2                 Rec Fee: $168.00
Commissioner of Records     Doc Code: A
State RTT:   Local RTT:

Record Prepared by & Return to:
U.S. Bank National Association
c/o PHFA-Accounting & Loan Servicing
211 North Front Street, P.O. Box 15057
Harrisburg, Pennsylvania 17105-5057
717-780-3800 or 1-800-346-3597

PIN / ID Number:

*Above space is intentionally left blank for recording data.*

## ASSIGNMENT OF MORTGAGE

For value received, **PENNSYLVANIA HOUSING FINANCE AGENCY ("PHFA")**, hereby grant, sell, convey, assign and deliver unto the **U.S. BANK NATIONAL ASSOCIATION**, (Trustee for the Pennsylvania Housing Finance Agency, pursuant to a Trust Indenture dated as of April 1, 1982), its successors and assigns, the following described Mortgage, together with the Note secured thereby:

Name of Original Mortgagor(s):         TIGIST GUEBREYES
Secured by the real property located at:   1336 KIMBERLY DRIVE, PHILADELPHIA, PA 19151
Original Mortgagee: SOVEREIGN BANK, FSB              Municipality of: PHILADELPHIA
Original Principal Amount:    $120,650.00      County Recorded in:    PHILADELPHIA
Mortgage Recorded:   August 4, 2008                   Instrument#: 51946869
Last Assignment to:   PA Housing Finance Agency       Instrument#: 51946870

IN WITNESS WHEREOF, the said Pennsylvania Housing Finance Agency, has caused this **Assignment of Mortgage** to be executed by its duly authorized officer. (Series: 103, PHFA) [CONDE]

DATED: May 14, 2010                    By: PENNSYLVANIA HOUSING FINANCE AGENCY

                                        Anthony J. Julian
                                        Director of Accounting and Loan Servicing

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF DAUPHIN

On this, the ___ day of _____, 2010, before me, the undersigned officer, personally appeared Anthony J. Julian, Director of Accounting and Loan Servicing, an authorized officer of the Pennsylvania Housing Finance Agency, and acknowledged that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

In witness whereof, I have hereunto set my hand and official seal.

                                        Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kimberley A. Ayala, Notary Public
City Of Harrisburg, Dauphin County
My Commission Expires Jan. 15, 2011
Member, Pennsylvania Association of Notaries

## CERTIFICATE OF RESIDENCE OF ASSIGNEE

I certify that the principal business and mailing address for this assignment and assignee is:
U.S. Bank National Association, c/o PHFA-Accounting & Loan Servicing
211 North Front Street, P.O. Box 15057, Harrisburg, Pennsylvania 17105-5057

                              Authorized          Officer

51946868
Page:   3 of  4
08/04/2006 11:15AM

## EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 34th Ward of the City of Philadelphia and described according to a Survey and Plan of Properties in "Overbrook Park No. 2 inches, made for Suburban Counties Realty Corporation by George T. Shegog, Surveyor and Regulator of the 7th District on Feb. 28, 1948, which plan was recorded in Philadelphia on March 3, 1948 in Plan Book No. 4 Page 17, Being Lot No. 396 and described as follows, to wit:-

SITUATE on the Southwesterly side of Kimberly Drive (46 feet wide) at the distance of 380 feet Southeastwardly from the Southeasterly side of Malvern Avenue (58 feet wide) both extended.

CONTAINING in front or breadth on the said Southwesterly side of Kimberly Drive Southeastward 16.030 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said Kimberly Drive, the Northwesterly and Southeasterly line thereof passing through the party walls between these premises and the premises adjoining on the Northwest and Southeast respectively, 100 feet to the center line of a certain 15 feet wide driveway paved with concrete which is parallel with the said Kimberly Drive and leading Northwestwardly into the said Malvern Avenue and Southeastwardly into Brockton Road (56 feet wide).

BEING known as 1336 Kimberly Drive.

TOGETHER with the free and common use, right, liberty and privilege of a certain driveway, as shown on the aforesaid plan, laid out across the rear of these and adjoining premises as and for a driveway, passageway and watercourse at all times, hereafter, forever, in common with the owners, tenants and occupiers of the lots of ground bounding thereon and entitled to the use thereof, SUBJECT, however, to the proportionate part of the expense of keeping the said driveway in good order, condition and repair at all times hereafter, forever.

BRT No. ▮▮▮▮▮

Being the same premises which Mary Hendzel, by her Attorney in Fact Arnold Rothstein by Deed dated 8/29/1994 and recorded 9/9/1994 in Philadelphia County in Deed Book VCS 672 Page 526 conveyed unto Gloria J. Hopson and Thelma Macklin, as joint tenants with the right of survivorship , in fee.

AND being the same premises which Gloria J. Hopson and Thelma Macklin by Deed dated 9/6/2006 and recorded 11/3/2006 in Philadelphia County as Document No. 51564365 conveyed unto Gloria J. Hopson,Thelma Macklin and Trudy Holloway, as joint tenants with the right of survivorship, in fee.
($1.00 Deed)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Tigist Guebreyes aka Tigist Guebreyes-Yimer
                                    Debtor

CHAPTER 13
                                    Debtor(s)
NO. 16-14007 MDC

### CERTIFICATE OF SERVICE

I, the undersigned, attorney for U.S. BANK NATIONAL ASSOCIATION (TRUSTEE FOR THE PENNSYLVANIA HOUSING FINANCE AGENCY) do hereby certify that true and correct copies of the foregoing Proof of Claim have been served October 27, 2016, by electronic filing upon those listed below:

Attorney for Debtor
David A. Scholl, 512 Hoffman Street
Philadelphia, PA 19148

**Bankruptcy Trustee**

William C. Miller Esq.
1234 Market Street
Suite 1813
Philadelphia, PA 19107

Date: October 27, 2016

*/s/ Joshua I. Goldman, Esquire*
Joshua I. Goldman, Esquire
KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia, PA 19106-1532
(215) 627-1322  FAX (215) 627-7734
Attorney for Movant/Applicant